## UNAUTHORIZED APPOINTMENT OF PHYSICIAN TO ATTEND QUARANTINED SMALL-POX PATIENTS.

Common Pleas Court of Marion County.

STATE OF OHIO, ON RELATION OF DANA O. WEEKS, v.
H. C. KRAUSE ET AL.*

Decided, November 25, 1914.

*Municipal Law—Employment of Physician by City to Attend Upon Cases of Contagious Disease—Sections 4408, 4410 and 4436 of the General Code Construed.*

1. The board of health of a city is not authorized to contract for the general employment of a district or ward physician to attend upon cases of contagion, unless such employment is authorized or consented to by action of the city council.

2. Where a physician is employed by the board of health, without consent of the city council, to attend upon all cases of small-pox existing or thereafter developing in the city, during the term of his employment, such contract is illegal and void, and mandamus will not lie to compel the council to provide payment for services rendered thereunder.

*Crissinger, Guthery & Strelitz,* for the relator.
*Carhart & Warner,* contra.

BALDWIN, J.

In this action the relator asks a peremptory writ of mandamus commanding the members of the council of the city of Marion to enact the necessary legislation and make an appropriation of funds to pay his claim against the city in the sum of $1,500 and interest.

Upon the filing of the petition an alternative writ was allowed and served upon respondents requiring them to either proceed with the necessary action looking to the payment of the claim, or show cause why they have not done so.

Respondents took no measures to provide for the payment of relator's claim, but filed their answer setting forth several rea-

*Cause dismissed in the Court of Appeals on a question of jurisdiction.

sons why they decline and why they should not be required to do so. Relator replies to this answer, and thus the issue is presented.

There is little or no dispute of fact in the case, the real issue being one of law.

The facts either admitted by the pleadings or found by the court from the evidence which are essential to the determination of the question involved are these:

The relator, who is a physician residing in the city, was on the 13th day of June, 1913, by resolution adopted by the board of health of the city, employed to give medical attendance to those sick of small-pox and quarantined on account thereof, his compensation being fixed at $15 per day. He entered upon this employment and continued therein until November 19, 1913. During this time the board of health by similar resolution changed the *per diem* rate of compensation, leaving the employment the same in other respects.

During this period the relator daily visited the quarantined patients and ministered to their wants substantially as claimed, and when he quit this service, his compensation computed, at the rates stated in the resolutions of the health board, amount to $1,500.

Relator thereupon presented his bills for that sum to the board of health, which allowed and approved the same and certified its action to the city council in due form of law. Whereupon an ordinance was introduced in council to provide the funds from which relator's claim could be paid. This ordinance was read at two meetings and coming up for final action on the third reading failed of adoption.

It is expressly admitted that during all the time of the rendition of the service for which relator claims, he was the health officer of the city, duly appointed by the health board, and that at the time of the approval of his claim, relator was a member of the health board.

Among the reasons asserted by respondents for refusing the legislation asked is that the relator's claim is fraudulent in that he charged for services not rendered. In any view, if fraud

intervened in the assertion of or procuring the allowance of the claim, the relator would have no standing as an applicant for mandamus. The evidence adduced falls far short of supporting this position of the respondents. It very satisfactorily appears that the relator upon each of the days for which he claims, rendered *some* medical service to quarantined patients. It is true that on many of the days he did little work of consequence, but he appears to have been on the job performing such service as was necessary. It is not for the court to determine in this action whether the contract attempted to be made by the board was wise, prudent or extravagant, or whether the services were worth the sum agreed to be paid in the contract of employment attempted to be made. The court is unable to find that the bills allowed contain any fictitious item, or that any fraud was practiced in procuring the allowance and certification thereof by the board of health.

It is entirely clear that for all obligations incurred by the board of health, within the scope of the authority conferred upon it by law, the city is liable, and that the city council has no right of revision or discretionary authority over the allowances made by the board within its conferred powers. Section 4451, General Code.

This case must therefore turn upon the question of the authority of the board, under the law, to incur the obligation asserted in the manner attempted.

This authority depends upon the construction of Sections 4408, 4410 and 4436, General Code.

It is urged by relator that his employment is authorized by Section 4436, and that he was employed thereunder, and that the board having approved and certified his bill for services the claim is liquidated, and nothing remains to be done except for the council to provide for its payment.

The relator expressly disclaims in his reply any employment as a ward or district physician under the provisions of Section 4408, General Code, and surely he was not so employed, because such employment or appointment could only be made by and with the consent of the council, and such consent was not procured.

According to the allegations of the petition and the facts proven, relator's employment was not to attend upon any single or isolated case, but it was general, to look after all small-pox cases in the city, and in fact he did attend upon all, numbering for the whole time some fifty or more quarantined cases.

The service thus performed, so far as relates to indigent persons (and all are alleged to be of that character), is such as is specifically provided for and enjoined by Section 4410 as a duty of a ward or district physician, appointed by the board under Section 4408.

The "district" for which a physician may be employed, may embrace such territory as the board prescribes—either some portion of, or the entire territorial limits of the city. In this instance the entire city was constituted the district.

Now, can a board of health legally appoint or employ a physician, clothing him with all the authority and attributes of a "district physician," and in fact making him such, without conforming to the express provision of Section 4408, which requires the consent of the council to such appointment?

I think not. Such course would be an evasion of the law and a disregard of the check and protection against abuse in such appointment which the Legislature has provided in requiring the sanction of council to such appointments.

The section relied upon by the relator, Section 4436, General Code, while it requires "medical attendance" to be furnished to persons quarantined in any house or place, does not attempt to prescribe the method of employment of physicians to perform that service, or to confer authority on the board so to do, presumably because such authority and the manner of its exercise had been explicitly defined in preceding sections of the chapter, viz., 4408 and 4410.

The object of Section 4436, as viewed by this court, in so far as it relates to medical attendance, is to enjoin the duty upon the health board to provide to those quarantined this attendance, which under the former sections they were authorized to employ with consent of the council, and to provide a method of reimbursement to the city for expense thus incurred, if the parties for whom the service was rendered are able to pay therefor.

If it can be said that both Sections 4408 and 4436 authorize the employment of physicians to attend upon quarantined cases, the one section providing only a general authority and the other a specific method to be pursued in making such employment, under the familiar rule of statutory construction the specific provision will prevail over the general provision.

So that viewed in either aspect the conclusion seems irresistible that the appointment or employment of the relator was not authorized by law, in the manner in which it was done. Hence no duty devolved upon the respondents as members of the council to provide for the payment of relator's claim, for which mandamus would lie under the provisions of Section 12283, General Code.

This conclusion disposes of the case, but in passing it is proper to say that in the opinion of the court, and without entering upon any discussion thereof, none of the other reasons given for non-compliance with the relator's demand are well taken.

As to one of the grounds, however, in view of the position taken by counsel for respondents and seemingly acquiesced in by counsel for relator, an explanation may be in order.

Respondents contend that if relator was employed at all, the employment must be as a ward or district physician, under Section 4408, and that he was ineligible to such appointment because he was at the time health officer of the city, and in support of this contention the act of April 25th, 1904 (97 O. L., 331), is cited. Such appointment is expressly inhibited by that act, but unfortunately for the argument, that act was carried into the General Code as Sections 4408 to 4412 inclusive, and by the act of March 15th, 1911 (102 O. L., 44), Section 4412, which contained the provision relied upon, was repealed and amended. In its amended form it provides "No member of the board of health shall be appointed health officer, nor shall a member of the board of health, *not* the health officer, be appointed as one of the ward physicians."

The literal reading of this amendment does not render the health officer ineligible to appointment as a ward physician. There is a palpable error somewhere, for manifestly it was in-

tended that the word printed *not,* should be *nor.* In this same erroneous form the amended section appears in Page & Adams' version of the statutes.

But this is not all. The Legislature in its wisdom, progressiveness and zeal for the public welfare, by the civil service act of April 28th, 1913 (103 O. L., 698, repealing Section 32, page 713), repeals Section 4412 in its entirety, at the same time providing (Section 31) for the indefinite continuance for certain purposes of its provisions. Couple this with the provisions of another civil service act, which places a physician in the unclassified service, and consider also the other act relating to board of health employees, found in 103 O. L., 436, and apply to all these new acts the new constitutional provision, Article II, Section 1c, that no law shall go into effect until ninety days after it is filed in the office of the Secretary of State by the Governor, and you have something to guess upon to determine what was the law of Ohio on this subject on the 13th day of June, 1913.

This may afford an added reason why the relator's right to the writ is not clear.

Without passing upon the question as to whether or not the relator may maintain an action on the common counts to recover a *quantum meruit* or *quantum valebant,* because not involved, the finding is that the peremptory writ should be and is refused and the petition dismissed at the costs of the relator.

Judgment accordingly.